**Kari E. Hong**
OSB # 06590
kari@honglawfirm.com
**LAW OFFICES OF KARI E. HONG**
320 SW Stark Street, Suite 518
Portland, OR 97204
T: (503) 242-3500
F: (503) 242-3505

*Attorneys for Plaintiff Robert M. Topolski*

**August J. Matteis, Jr.\***
matteisa@gilbertoshinsky.com
**Alyson A. Foster\***
fostera@gilbertoshinsky.com
GILBERT OSHINSKY LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
T: (202) 772-2200
F: (202) 772-1924

\* Application for Admission *Pro Hac Vice* Pending

**Gregory P. Erthal**
gerthal@simmonscooper.com
SIMMONSCOOPER LLC
707 Berkshire Blvd., PO Box 521
East Alton, IL 62024
T: (618) 259-2222
F: (618) 259-2251

**Andrea Bierstein**
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN
    SHERIDAN FISHER & HAYES LLP
112 Madison Avenue
New York, NY 10016-7416
T: (212) 784-6403
F: (212) 784-6420

*Attorneys for Plaintiff Robert M. Topolski*

## THE UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT M. TOPOLSKI**,<br>individually and on behalf of all<br>others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>**COMCAST CORPORATION**, *et al.*,<br><br>          Defendants. | **Case No. CV 08-852 PK**<br><br><br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANTS' MOTION TO STAY AND<br>ALTERNATIVE MOTION TO DISMISS**<br><br>Hearing Date:  November 19, 2008 |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL ALLEGATIONS ................................................................................ 4

ARGUMENT ....................................................................................................... 9

I.      STANDARD FOR A MOTION TO DISMISS ........................................ 9

II.     THE ALLEGATIONS OF THE COMPLAINT ARE SUFFICIENT
        TO STATE CLAIMS UNDER THE OREGON UTPA ............................ 9

        A.      Pleading With Particularity ......................................................... 10

        B.      Comcast's Alleged Disclosure Of Its Practices .......................... 11

        C.      Puffery ......................................................................................... 13

III.    NEITHER STAY NOR DISMISSAL IS JUSTIFIED UNDER FEDERAL LAW ... 15

IV.     THE OREGON UTPA CLAIMS ARE NOT BARRED BY THE
        STATUTE OF LIMITATIONS .............................................................. 19

        A.      At Best, Topolski's FCC Comments Create Questions Of Fact
                Regarding When The Statute Of Limitations Was Triggered ...... 20

        B.      Topolski Can Bring Oregon UTPA Claims Based On
                Comcast's Wrongful Conduct During The Period of Limitations .... 25

V.      THE PENNSYLVANIA UTPCPL CLAIM SHOULD NOT BE DISMISSED ....... 27

VI.     TOPOLSKI MAY PURSUE UNJUST ENRICHMENT CLAIMS ......................... 32

CONCLUSION ................................................................................................... 35

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Alberton v. Commonwealth Land Title Insurance Co.*, 247 F.R.D. 469
   (E.D. Pa. 2008)..................................................................................................34

*American Airlines v. Wolens*, 513 U.S. 219 (1995) .........................................................19

*Apple Computer, Inc. v. Podfitness, Inc.*, No. 06-5805 SBA,
   2007 WL 1378020 (N.D. Cal. May 10, 2007) ...........................................................16

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392
   (E.D. Pa. 2006)...........................................................................................30, 34

*Banks v. Martin*, 717 P.2d 1192 (Or. Ct. App. 1986) .......................................................11

*Barns v. City of Eugene*, 52 P.3d 1094 (Or. Ct. App. 2002)...........................................25

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)........................................................18, 19

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................................................9

*Betz v. Trainer Wortham & Co., Inc.*, 236 Fed. Appx. 253,
   2007 WL 1494018 (9th Cir. May 11, 2007) .............................................................25

*In re Bextra & Celebrex*, No. M: 05-1699 CRB,
   2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) .........................................................16

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .................................................................9

*Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239 (Or. 1972) ............................................24

*Coastal Abstract Serv. Inc. v. First America Title Insurance Co.*,
   173 F.3d 725 (9th Cir. 1999) .....................................................................................13

*CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167 (D. Or. 2001) ...................14

*Commonwealth v. Monumental Properties, Inc.*, 329 A.2d 812 (Pa. 1974).....................28

*County of Santa Clara v. Astra USA, Inc.*, 540 F.3d 1094 (9th Cir. 2008) ......................15

*Davis v. Bostick*, 580 P.2d 544 (Or. 1978)........................................................................26

Page(s)

*De Joseph v. Zambelli*, 139 A.2d 644 (Pa. 1958) .............................................................34

*Fietler v. Animation Celection, Inc.*, 13 P.3d 1044 (Or. Ct. App. 2000) ...........................10

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) .........................................................25

*Gonzalez v. Old Kent*, No. 99-5959, 2000 WL 1469313
  (E.D. Pa. Sept. 21, 2000) ..................................................................................33, 34

*Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*,
  142 P.3d 1044 (Or. 2006) ......................................................................................34

*Kelley v. Microsoft Corp.*, 251 F.R.D. 544 (W.D. Wash. Feb. 22, 2008)........................31

*L.H. Morris Electric, Inc. v. Hyundai Semiconductor America, Inc.*,
  125 P.3d 1 (Or. Ct. App. 2005)..............................................................................33

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).........................................11, 21

*Levy v. Keystone Food Products*, No. 07-5502, 2008 WL 4115856
  (E.D. Pa. Aug. 27, 2008)........................................................................................30

*Line Lexington Lumber & Millwork Co., Inc. v. Penn. Public Corp.*,
  301 A.2d 684 (Pa. 1973)........................................................................................34

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001)......................................................19

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000)................................................31

*McCulloch v. Price Waterhouse LLP*, 971 P.2d 414 (Or. Ct. App. 1998)........................22

*Migliaccio v. Midland National Life Insurance Co.*, 436 F. Supp. 2d 1095
  (C.D. Cal. 2006)....................................................................................................16

*Mikola v. Penn Lyon Homes, Inc.*, No. 07-0612, 2008 WL 2357688
  (M.D. Pa. June 4, 2008) ....................................................................................29, 30

*Minority Television Project, Inc. v. FCC*, No. C-06-02699 EDL,
  2007 WL 781974 (N.D. Cal. Mar. 13, 2007)............................................................2

Page(s)

*Nesovic v. United States*, 71 F.3d 776 (9th Cir. 1995).......................................25

*Raudebaugh v. Action Pest Control, Inc.*, 650 P.2d 1006 (Or. Ct. App. 1982)...............11

*Redding v. MCI Telecommunications Corp.*, No. C-86-5498-CAL,
    1987 WL 486960 (N.D. Cal. Sept. 29, 1987) ............................................16

*Sanders v. Francis*, 561 P.2d 1003 (Or. 1977) ................................................10

*Sherwood v. Finch*, No. CV-00-349-HU, 2000 U.S. Dist. LEXIS 20906
    (D. Or. Dec. 20, 2000) ...............................................................26

*Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008) .................................17

*Simpson v. Burrows*, 90 F. Supp. 2d 1108 (D. Or. 2000) ....................................26

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)..................13, 14

*State ex rel. Redden v. Discount Fabrics, Inc.*, 615 P.2d 1034 (Or. 1980)......................11

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) ...............................14

*Stone St. Services, Inc. v. Daniel*s, No. CIV.A. 00-1904, 2000 WL 1909373
    (E.D. Pa. Dec. 29, 2000) .............................................................31

*Tiberi v. Cigna Corp.*, 89 F.3d 1423 (10th Cir. 1996).......................................25

*True v. America Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175 (C.D. Cal. 2007)...........19

*Tubos de Acero de Mexico, S.A. v. American International
    Investment Corp., Inc.*, 292 F.3d 471 (5th Cir. 2002)...............................25

*Volt Services Group v. Adecco Employment Services*,
    35 P.3d 329 (Or. Ct. App. 2001)..................................................32

*Weinberg v. Sun Company, Inc.*, 740 A.2d 1152 (Pa. Super. Ct. 1999),
    *rev'd on other grounds*, 565 Pa. 612 (2001)..................................28, 29, 30

*In re Wet Seal, Inc. Sec. Litigation*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................13

Page(s)

*Williams v. Gerber Products Co.*, 523 F.3d 934 (9th Cir. 2008)................................13, 14

*Wilson Area Sch. District v. Skepton*, 895 A.2d 1250 (Pa. 2006).....................................34

*Wolverton v. Stanwood*, 565 P.2d 755 (Or. 1977) ............................................................11

*Wright v. Kia Motors America Inc.*, No. 06-6212, 2007 WL 316351
    (D. Or. Jan. 29, 2007) ............................................................................................ *passim*

*Zeran v. America Online, Inc.*, 958 F. Supp. 1124 (E.D. Va. 1997)..................................19

## STATUTES

47 U.S.C. § 230.................................................................................................................18

FCC, *Electronic Filing of Documents in Rulemaking Proceedings*,
    63 Fed. Reg. 24,121 ¶ 2 (May 1, 1998) ....................................................................21

Fed. R. Civ. P. 12.............................................................................................................9

Fed. R. Evid. 201 ............................................................................................................2

## OTHER

66 Am. Jur. 2d *Restitution and Implied Contracts* § 9 .....................................................32

Oregon Unlawful Trade Practices Act, O.R.S. §§ 646.605-.652.............................. *passim*

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
    73 P.S. §§ 201-1, *et seq.*........................................................................................ *passim*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY
AND ALTERNATIVE MOTION TO DISMISS**

Plaintiff Robert M. Topolski ("Topolski" or "Plaintiff"), through undersigned counsel,

respectfully submits this opposition to the Motion to Stay and Alternative Motion to Dismiss

("Motion to Dismiss" or "Motion"), which was filed on October 6, 2008, by Defendants

Comcast Corporation, Comcast Cable Communications Holding, Inc., Comcast Cable

Communications, LLC, and Comcast Cable Communications Management, LLC (collectively,

"Defendants" or "Comcast").   For the reasons set forth below, the Court should deny Comcast's

Motion to Dismiss.

**PRELIMINARY STATEMENT**

This consumer class action is based on Comcast's false advertising and failure to disclose

that it intentionally and repeatedly blocks its high-speed Internet customers from using certain

Internet applications.  Contrary to its advertising that it provides "unfettered access to all the

content, services and applications that the Internet has to offer," Comcast intentionally blocks its

own customers from using certain peer-to-peer filing sharing applications.  Class Action

Allegation Complaint ("Compl.") ¶ 1, Dkt. #1, filed July 18, 2008.  Not only has Comcast

consistently and repeatedly failed to disclose that it blocks these applications, but it also has

expressly denied such practices by stating that it "does not block access to any web sites or

online applications."  *Id.* ¶ 25.

As Comcast admits in its Motion to Dismiss, the Federal Communications Commission

("FCC") began an investigation of Comcast's network management practices in 2007, and issued

a detailed memorandum and order on August 20, 2008.  Mot. at 9-12.  The FCC held that

Comcast's practices of blocking its customers' access to certain Internet applications was not

reasonable network management, but rather "that the company's discriminatory and arbitrary

practice unduly squelches the dynamic benefits of an open an accessible Internet and does not

constitute reasonable network management." FCC, Mem. Op. & Order ("FCC Order") ¶ 1

(Aug. 20, 2008), http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-08-183A1.pdf.[1]

The FCC stated that it would "institute a plan that will bring Comcast's unreasonable conduct to

an end." *Id.*

This case is not about whether Comcast's network management practices were

reasonable. Rather, Plaintiff alleges that he and others similarly situated suffered an

ascertainable loss by paying for a service that they did not receive. Comcast advertises

unfettered access and its customers pay for unfettered access. Comcast does not deliver.

Instead, Comcast fails to disclose, and affirmatively denies, that it intentionally blocks access to

certain Internet applications. Accordingly, Plaintiff's complaint seeks redress on behalf of

himself and other high-speed Internet customers under state consumer protection statutes and the

common law of unjust enrichment.

In its Motion to Dismiss, Comcast asserts a wide range of desperate arguments in an

attempt to dismiss Plaintiff's complaint. Comcast argues that (1) the complaint is not properly

pleaded, (2) the claims are preempted by federal law, and (3) the claims are otherwise not

maintainable under state law. All of these arguments fail.

First, Comcast argues that Plaintiff failed to sufficiently state a claim because

"Comcast did not defraud Mr. Topolski or anyone else." Mot. at 27. Comcast specifically

argues that because it made sufficient disclosures and because its advertisements were "mere

---

[1]    The Court may take judicial notice of the FCC Order under Fed. R. Evid. 201 because it is a matter of public record, generally known, that is not subject to dispute. *See, e.g.*, *Minority Television Project, Inc. v. FCC*, No. C-06-02699 EDL, 2007 WL 781974, at *2 n.1 (N.D. Cal. Mar. 13, 2007) (taking judicial notice of FCC Order).

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 2
Case No. CV 08-852 PK**

puffery," Plaintiff fails to state a claim. *Id.* at 27-31. While Comcast will have an opportunity to present these arguments to a jury, the Motion to Dismiss fails entirely because it not only relies on information outside of the pleadings, but also creates material disputes of fact. Indeed, even after a year-long fact intensive investigation, the FCC found that "Comcast's failure to disclose the company's practice to its customers has compounded the harm" caused by the blocking. FCC Order ¶ 1. Moreover, the FCC held that Comcast's "first reaction" to the allegations of throttling "was not honesty, but at best misdirection and obfuscation." *Id.* ¶ 53. Thus, it is truly remarkable that Comcast would assert to this Court that Plaintiff's allegations should be dismissed at this stage.

Second, Comcast alternatively argues for a stay or dismissal because the FCC has primary jurisdiction over this dispute or the claims are preempted by federal law. Mot. at 12-21. But Comcast's argument is based entirely on the premise that Plaintiff is challenging the reasonableness of Comcast's network management practices. The Complaint, however, does not allege that Comcast's network management practices were unreasonable or illegal, but rather, only that falsely advertising and failing to disclose those practices violates state law.

Finally, Comcast argues that Plaintiff cannot bring any of his claims because (1) his claims under the Oregon Unlawful Trade Practices Act, O.R.S. §§ 646.605-.652 ("UTPA"), are barred by the statute of limitations; (2) as an Oregon resident, he cannot bring a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"); and (3) he cannot bring any claim for unjust enrichment. Mot. at 21-27. These claims fail because, among other reasons, (1) Comcast, at best, creates a material dispute of fact regarding when Comcast committed the series of violations at issue and when Plaintiff sufficiently knew of the violations to bring this claim; (2) Plaintiff can bring a

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 3
Case No. CV 08-852 PK**

Pennsylvania UTPCPL claim to eradicate unjust practices in Pennsylvania; and (3) there is no bar to Plaintiff's unjust enrichment claim.

Accordingly, and as set forth below, Comcast's motion should be denied.

## FACTUAL ALLEGATIONS

Defendants are among the largest providers of high-speed Internet service in Oregon and in approximately thirty-eight other states and the District of Columbia. Compl. ¶ 1. Comcast advertises high-speed Internet service to tens of thousands of Oregonians and millions of consumers across the country.

Fast download and upload speeds and unfettered access are key features of Internet service. These features are especially important to consumers who download or upload. Comcast's advertisements of its high-speed Internet service as providing "the fastest Internet connection" and "unfettered access to all the content, services, and applications that the Internet has to offer" were misleading, deceptive, and false. *Id*. ¶ 1. Comcast specifically advertises that:

- Its high-speed Internet provides the fastest possible access to "web applications" that are the most "data intensive." *Id.*

- Comcast "does not block access to any web sites or online applications, including peer-to-peer services." *Id.*

- "[W]hen it comes to getting the fastest Internet connection, a lot of different services claim to be the fastest, but Comcast actually delivers." *Id.* ¶ 18.

- "The speed that this digital cable Internet connection can provide blows away the speeds that most competing technologies can attain." *Id.*

- "Comcast's high speed Internet service provides anywhere from four to six times the speed that DSL based Internet access can provide!" *Id.*

- That its service is "Blazing-Fast," "Crazy-Fast," "Mind-Blowing," "Scorching," "Lightning-Fast," and "Way Faster Than DSL." *Id.*

- "[Comcast] makes it possible for you to download even large files in just a few moments and to get onto sites such as gaming sites or virtual worlds." *Id.* ¶ 19.

Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 4
Case No. CV 08-852 PK

- "Comcast's high speed Internet also has the advantage of always being on and ready for use." *Id.*

- "In order to unleash the full power of the Internet, you need to have the fastest possible access to it in your own home. This will be even more true as the Internet becomes an ever growing part of our lives. The need for speed comes from the fact that many of the best Web applications are also the most data intensive. That in turn, translates into requiring either more time or speed to download them, and since nobody wants to be staring at a download progress meter any longer than they have to, faster Internet connections equal a more enjoyable experience of surfing the Web." *Id.*

- "[Comcast] monitors your download activity, and when it detects that you've requested an especially large file or web document, it kicks the Internet connection into overdrive so that you can get that file onto your computer and go about your business!" *Id.*

In reality, Comcast intentionally blocks, slows, and delays its customers from using peer-to-peer ("P2P") file-sharing applications, or otherwise impedes those applications, and does so in a manner not readily apparent to the consumer – by impersonating the computers of users attempting to share files. *Id.* ¶ 2. Comcast forges electronic signals known as "reset packets" that impersonate one of the computers attempting to share a particular file. *Id.* The forged reset packets tell the transmitting computer to stop its transmission. *Id.*

In early 2007, public interest organizations and consumers alleged that Comcast and its subsidiaries were engaging in these practices. *Id.* ¶ 22. Comcast denied the allegations and stuck to its original misrepresentations by claiming that it did not block, slow, delay, or otherwise impede access to the Internet for any applications or protocols. *Id.* Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether Comcast was impeding its subscribers' access to its high-speed Internet services. *Id.* ¶ 23.

The testing led to shocking results. *Id.* ¶ 24. Comcast was blocking, slowing, delaying, or otherwise impeding Internet access for certain P2P applications, and was doing so

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 5
Case No. CV 08-852 PK**

in an outrageously deceptive manner – by impersonating the computers of users involved in file-sharing.  *Id.*  Comcast was forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share.  *Id.*  The reset packet instructed the source computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files.  *Id.*

Even after these results were made public, Comcast continued to deny its actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer."  *Id.* ¶ 25.  Comcast further stated that:

> [We do not] block access to any Web site or applications, including BitTorrent.  Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.

*Id.*

Then, in public comments submitted to the FCC on February 12, 2008, Comcast finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files. *Id.* ¶ 26.  According to Comcast, its efforts to "delay" certain file-sharing applications were actually an attempt to prevent service degradation resulting from what it characterized as excessive bandwidth congestion created by these file-sharing applications, but "only during periods of peak network congestion."  *Id.*  Comcast further admitted that it had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods, thus implying that its congestion thresholds apply only during certain peak usage periods.  *Id.*

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 6
Case No. CV 08-852 PK**

After those comments were submitted, however, an independent group studied Comcast's congestion patterns and determined that Comcast actually "delays" file-sharing around the clock, not "only during periods of peak network congestions" as Comcast had told the FCC. *Id.* ¶ 27. And in its next comment to the FCC on July 10, 2008, Comcast admitted that this is true. *Id.*

Notwithstanding that Comcast made all of the aforementioned admissions in comments to the FCC, Comcast never disclosed to its subscribers or potential subscribers that it blocked, slowed, delayed, or otherwise impeded their Internet access. *Id.* ¶ 28. On the contrary, Comcast continued to state that it provided unfettered access to the Internet using the fastest possible Internet connection. *Id.*

On August 20, 2008, after multiple hearings, briefs, comments, and filings, the FCC issued an order stating that Comcast's actions constitute unreasonable network management practices:

> Regardless of what one calls it, the evidence reviewed above shows that Comcast selectively targeted and terminated the upload connections of its customers' peer-to-peer applications and that this conduct significantly impeded consumers' ability to access the content and use the applications of their choice.

FCC Order ¶ 44. The FCC ordered Comcast to end this practice and disclose to consumers the precise nature of its network management practices. *See id.* ¶¶ 51-55.

In this action, Topolski brings six claims against Comcast based on Comcast's misleading and deceptive advertising: (1) violation of the Pennsylvania UTPCPL's proscription of "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," 73 P.S. § 201-2(xxi), Compl. ¶¶ 47-53; (2) violation of the Pennsylvania law of unjust enrichment based on Comcast's retention of a benefit gained through deceptive advertising, Compl. ¶¶ 54-60; (3) violation of the consumer protection statutes of each of the

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 7
Case No. CV 08-852 PK**

states in which Comcast sells high-speed Internet service, *id.* ¶¶ 61-68; (4) violation of the Oregon law of unjust enrichment based on Comcast's retention of a benefit gained through deceptive advertising, *id.* ¶¶ 69-75; (5) violation of the Oregon UTPA's proscription of representing that "services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that they do not have," ORS 646.608(1)(e), Compl. ¶¶ 76-83; and (6) violation of the Oregon UTPA's proscription of advertising "services with intent not to provide them as advertised, or with intent not to supply reasonably expectable public demand," ORS 646.608(1)(i), Compl. ¶¶ 84-91.

At every opportunity, Comcast has forestalled having to respond to Plaintiff's Complaint. Comcast first requested and received a five-week extension to respond to the Complaint. Then, instead of answering the Complaint, Comcast asked this Court to stay the proceedings pending action by the Judicial Panel on Multidistrict Litigation on the motion of Defendants (and certain of their subsidiaries and affiliates) to consolidate and transfer this action with five other actions pending against Comcast. *See* Dkt. #3, filed Aug. 15, 2008. Next, Comcast filed a motion to compel arbitration under the arbitration provision of the subscriber agreement because, it claimed, Topolski had not opted out of the arbitration provision even though the agreement "conspicuously instructed plaintiff how to opt out." *See* Dkt. #4, filed Sept. 26, 2008. But as Comcast's own records demonstrate, Topolski *had* opted out of the arbitration provision; and if Comcast had conducted the necessary diligence before filing that motion, it would have known so. Comcast appropriately withdrew that motion. Like its several previous attempts, this Motion to Dismiss is just another attempt by Comcast to delay an adjudication of the merits of Plaintiff's claims.

Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 8
Case No. CV 08-852 PK

Accordingly, the Court should deny Comcast's motion so the merits can be expeditiously adjudicated.

## ARGUMENT

### I. STANDARD FOR A MOTION TO DISMISS

When a court entertains a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it must construe the pleadings in the light most favorable to the plaintiff and must accept all material allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* at 1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 1974.

### II. THE ALLEGATIONS OF THE COMPLAINT ARE SUFFICIENT TO STATE CLAIMS UNDER THE OREGON UTPA

Comcast argues that Topolski's Oregon UTPA claims should be dismissed under state law because (a) he failed to plead the Oregon UTPA claims with the requisite particularity; (b) Comcast adequately disclosed that it "managed congestive transmissions;" and (c) the advertisements at issue are non-actionable "puffery." Mot. at 27-31. Each of these arguments is without merit.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 9
Case No. CV 08-852 PK**

A.    **Pleading With Particularity**

Comcast argues that Topolski's Oregon UTPA claims (Counts V and VI) should be

dismissed for failure to meet the pleading requirements of the UTPA.  This argument is

untenable.  Under the UTPA, a party must prove that (1) an unfair trade practice (2) caused

(3) an ascertainable loss.  O.R.S. § 646.638(1); *Fietler v. Animation Celection, Inc.*, 13 P.3d

1044, 1047 (Or. Ct. App. 2000).  The Complaint devotes pages to pleading the bases for

Topolski's Oregon UTPA claims (and other consumer fraud statutory claims), and more than

adequately sets forth sufficient allegations to state claims under that statute.  Topolski has

specifically and carefully pleaded each requirement of a UTPA claim – namely, that Comcast

engaged in unfair trade practices by falsely advertising its high-speed Internet service and failing

to disclose its characteristics, *see* O.R.S. §§ 646.608(1)(e) & (1)(i), Compl. ¶¶ 78-80, 86-88; that

these misrepresentations and omissions caused Topolski to pay for services he did not receive,

*see* Compl. ¶¶ 82, 89; and that Topolski therefore suffered an ascertainable loss, *see id*.  These

allegations are more than enough to meet the pleading requirements of the UTPA.  Further, to the

extent that Comcast argues that Topolski's UTPA claims should be dismissed for failure to plead

reliance, this argument is misplaced because Topolski's claims are based on Comcast's *failure to*

*disclose* that it blocks, slows, delays, or otherwise impedes Internet access, *see* Compl. ¶¶ 79, 98,

so he therefore is not required to plead reliance.  *Sanders v. Francis*, 561 P.2d 1003, 1006

(Or. 1977); *Wright v. Kia Motors Am. Inc.*, No. 06-6212, 2007 WL 316351, at *3-4 (D. Or.

Jan. 29, 2007).  More importantly, Comcast's argument is completely frivolous because Topolski

specifically alleged in each UTPA Count that he "relied on Comcast's representations when [he]

purchased Comcast's services."  *See* Compl. ¶¶ 81, 89 ("Plaintiff and all other Oregon residents

relied on Comcast's representations when they purchased Comcast's services.").

Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 10
Case No. CV 08-852 PK

Comcast's argument that Topolski's UTPA claims do not comply with Rule 9(b) is similarly misplaced.  Rule 9(b)'s pleading requirements apply only to allegations of fraud, and Oregon courts uniformly hold that the pleading and proof requirements of fraud do not apply to claims brought under the UTPA.  *See Banks v. Martin*, 717 P.2d 1192, 1196 (Or. Ct. App. 1986) ("Plaintiff is correct that she need not prove the elements of common law fraud in order to recover under the [UTPA].").[2]

### B.    Comcast's Alleged Disclosure Of Its Practices

Next, Comcast argues that Topolski's false advertising claims must be dismissed as a matter of law because Comcast "disclosed that it managed congestive transmissions on its network" in its subscriber agreement.  Mot. at 6-9, 28.  Comcast's argument fails.

First, the terms of the subscriber agreement on a Comcast webpage cannot be considered at the Rule 12 stage.  Topolski's allegations and claims do not rely on (and thus do not even mention) the terms of the subscriber agreement.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (a court may not look beyond the complaint unless the complaint "necessarily relies on" a specific document).  This Court therefore should not even consider the "disclosures" that Comcast purports to have made to Topolski.  Indeed, by introducing these documents at this stage, Comcast is asking the Court to decide central issues of fact before Topolski has had the chance to assemble and prove his factual case.  It is premature for the Court

---

[2]    *See also State ex rel. Redden v. Discount Fabrics, Inc.*, 615 P.2d 1034, 1039 (Or. 1980) ("A review of the UTPA reveals that not all of these elements [for common law fraud] are required in order to recover under the [UTPA]."); *Wolverton v. Stanwood*, 565 P.2d 755, 757 (Or. 1977) ("The elements of common law fraud are distinct and separate from the elements of a cause of action under the Unlawful Trade Practice Act and a violation of the Act is much more easily shown."); *Raudebaugh v. Action Pest Control, Inc.*, 650 P.2d 1006, 1009 (Or. Ct. App. 1982) (UTPA proscribes different types of behavior than common law fraud; "[h]ad the legislature intended that a consumer prove all the elements of common law fraud in order to recover damages, it would have been unnecessary to create a cause of action by statute").

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 11
Case No. CV 08-852 PK**

to decide whether Comcast's advertisements were misleading based only on the subscriber agreement; or to decide whether the subscriber agreement should have dissuaded consumers from believing that Comcast offered "unfettered access" to the Internet, as advertised. These are questions of fact that should be decided after the parties have had the opportunity to assemble and present evidence and testimony.

Second, even if the Court should consider Comcast's documents, they do not support dismissal. These documents contain nothing more than vague statements about network management that do not constitute adequate disclosures of Comcast's actual practices. Indeed, after Comcast submitted substantial amounts of the same "disclosure" evidence to the FCC, the agency rejected Comcast's argument that it sufficiently disclosed its practices to consumers:

> Comcast's claim that it has always disclosed its network management practices to its customers is simply untrue. Although Comcast's Terms of Use statement may have specified that its broadband Internet access service was subject to "speed and upstream and downstream rate limitations," such vague terms are of no practical utility to the average customer. . . . [and ] although Comcast eventually disclosed some elements of its network management practices to customers, Comcast's first reaction to allegations of discriminatory treatment was not honesty, but at best misdirection and obfuscations.

FCC Order ¶ 53. Nothing indicates that these "disclosures" would have been sufficient to cause a reasonable consumer to believe that Comcast would block access to Internet applications. Indeed, Comcast expressly and repeatedly denied that it was blocking, slowing, delaying, or otherwise impeding access to some applications. *See* Compl. ¶¶ 22-27. Based on this record, Comcast's vague statements regarding "network management" do not warrant dismissal of Topolski's claims.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 12
Case No. CV 08-852 PK**

C.    **Puffery**

Comcast also argues that each advertisement that Plaintiff challenges is non-actionable "puffery" – that is, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). A statement is non-actionable "puffery" when it is not capable of being proved false through discovery or "of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999). When evaluating whether a statement is literally false or "puffery," it must be analyzed in its full context. *Southland Sod Farms*, 108 F.3d at 1139; *see also Williams v. Gerber Prod. Co.*, 523 F.3d 934 (9th Cir. 2008).

Here, Comcast's advertisements that Comcast provides the "fastest Internet connection" to "web applications" that are the most "data intensive" and "does not block access to any web sites or online applications, including peer-to-peer services," are far too specific and measurable to be dismissed as puffery. Compl. ¶ 1. These are not the types of statements that courts find to be non-actionable puffery, which generally are broad, unspecific statements of general superiority. *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007) ("[w]e're the leader in a rapidly growing market"; "[w]e have the convergence of the health care trends"; "[w]e have an extremely broad product line"; "business couldn't be better"; "it's a great time for a company like ours"; "we already have a sizable lead over our competition"; "measurable progress"; "continuing improvements"; "outstanding retail results") (citations omitted).

Rather, each of Comcast's representations explicitly or implicitly promises that Comcast does not interfere with consumers' use of data-driven web applications such as P2P applications. And each statement is sufficiently specific that it may be proven false through

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 13
Case No. CV 08-852 PK**

discovery:  either Comcast fetters the consumer's Internet access, or it does not; either Comcast

blocks access to peer-to-peer services, or it does not.  Indeed, the evidence uncovered in the FCC

proceeding has already shown that it does.  *See* Compl. ¶¶ 27-28.  Thus, these are not the types

of statements that constitute puffery.  *See, e.g.*, *Stickrath v.  Globalstar, Inc.*, 527 F. Supp. 2d

992, 999 (N.D. Cal. 2007) (representation that a cell phone service works "virtually anywhere" is

not puffery because it "can be proved or disproved in discovery"); *Southland Sod Farms*,

108 F.3d at 1145 (statement that defendant's turf required "50% less mowing" is not puffery);

*CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167, 1177 (D. Or. 2001) (representation

that "large numbers of colleges and universities have left CollegeNET [an online application

system] for Embark" is not puffery because "large numbers" can be proven or disproven);

*cf. Williams*, 523 F.3d at 940 (name of product – "fruit juice snacks" – and package pictures of

fruits are not puffery because they suggest "that those fruits or their juices are contained in the

product").

      And Comcast's other representations, taken together and in context, further lead a

consumer such as Topolski to believe that Comcast's product aims to provide fast, unfettered

Internet use – not that it intentionally delays and blocks such use.  Compl. ¶¶ 18-19.  For

example, Comcast's advertisements regarding the speed of its Internet service (*e.g.*, "four to six

times the speed that DSL based Internet access can provide!," *id.* ¶ 18), and the consumer's

ability to use data-intensive applications with ease (*e.g.*, "Comcast . . . kicks the Internet

connection into overdrive so that you can get that file onto your computer and go about your

business!", *id*. ¶ 19), all lead a reasonable consumer to believe that Comcast would not interfere

with his or her ability to upload and download files.  These statements thus are actionable

because, together, they "add[] to the potential deception."  *Williams*, 523 F.3d at 939 (the claim

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 14
Case No. CV 08-852 PK**

that Fruit Juice Snacks is "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy" is actionable because it "adds to the potential deception").

## III.    NEITHER STAY NOR DISMISSAL IS JUSTIFIED UNDER FEDERAL LAW.

Comcast asserts that Topolski challenges the reasonableness of its network management practices. Based on that red herring argument, Comcast concludes that this case should be stayed pending the outcome of the appeal of the FCC decision under the doctrine of "primary jurisdiction," Mot. at 13-17, or dismissed as preempted by federal law, *id.* at 17-21. In fact, the complaint does not challenge the reasonableness of Comcast's practices, but rather challenges only Comcast's false advertising and failure to disclose that it blocks certain Internet applications.[3] Accordingly, Comcast's primary jurisdiction and preemption arguments must fail.

The primary jurisdiction doctrine applies only when an action calls upon the court to resolve an issue "that has been placed by Congress within the jurisdiction of an administrative body having regulatory authority . . . pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that . . . requires expertise or uniformity in administration." *County of Santa Clara v. Astra USA, Inc.*, 540 F.3d 1094, 1108 (9th Cir. 2008). The FCC does not regulate advertising by Internet service providers and Defendants do not claim

---

[3]    Compl. ¶¶ 49-53 (COUNT I) ("Comcast repeatedly represented to Plaintiff and the Class that Comcast's high-speed Internet service would provide the fastest Internet connection and unfettered access to the Internet. . . . Comcast failed to inform its customers that it would block, slow, delay, or otherwise impede their fast and unfettered access to the Internet. . . . Comcast's representations and omissions were false . . . . Comcast's representations and omissions were deceptive. . . . Comcast's misrepresentations and omissions caused Plaintiff and the Class to pay for services that they did not receive."); ¶¶ 56-60 (COUNT II) (alleging same); ¶¶ 62-67 (COUNT III) (alleging same); ¶¶ 71-75 (COUNT IV) (alleging same); ¶¶ 78-82 (COUNT V) (alleging same); ¶¶ 86-90 (COUNT VI) (alleging same).

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 15
Case No. CV 08-852 PK**

otherwise.  Accordingly, because Topolski has chosen only to pursue claims based on Comcast's

advertising practices and failure to disclose, the primary jurisdiction doctrine does not apply:

> Plaintiffs have chosen not to assert rights under the statute [the Federal
> Communications Act] and to allege common law claims [of breach of
> contract for rescinding a long-distance service] instead.  The
> "reasonableness" of defendant's practices — an issue that is within the
> expertise of the FCC — is not an issue in this lawsuit. The court concludes
> that the . . . issues raised do not require the expertise or guidance of the
> FCC.

*Redding v. MCI Telecomm. Corp.*, No. C-86-5498-CAL, 1987 WL 486960, at *4 (N.D. Cal.

Sept. 29, 1987).  Indeed, courts specifically and consistently hold that, when an agency is not

charged with regulating advertising practices, the primary jurisdiction doctrine does not apply to

claims challenging those practices.  *See Apple Computer, Inc. v. Podfitness, Inc.*, No. 06-5805

SBA, 2007 WL 1378020 (N.D. Cal. May 10, 2007) (primary jurisdiction doctrine not applicable

to unfair competition and false advertising claims because the relevant agency does not regulate

those aspects of the industry); *In re Bextra & Celebrex*, No. M: 05-1699 CRB, 2006 WL

2374742, at *12 (N.D. Cal. Aug. 16, 2006) ("Plaintiffs' false advertising claims do not implicate

the primary jurisdiction doctrine.  The issue is not whether Celebrex has fewer GI complications

than other over-counter NSAIDs; the FDA has already determined that it does not.  The issue is

whether contrary to the FDA's findings, Pfizer nonetheless falsely claimed that Celebrex was

superior.  Courts and juries frequently decide similar false advertising claims."); *Migliaccio v.

Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1105-06 (C.D. Cal. 2006) (deference to

insurance agency not warranted under primary jurisdiction doctrine because "plaintiffs'

complaint is grounded in common law claims for fraudulent misrepresentation," which "do not

appear to involve 'technical questions of fact uniquely within the expertise and experience of an

[insurance] agency'" and which "numerous courts have addressed . . . under identical statutes

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 16
Case No. CV 08-852 PK**

without seeking guidance from the California Department of Insurance"). *Cf. Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008) (primary jurisdiction doctrine applies to false advertising claims because Office of Thrift Supervision regulations expressly regulate advertising).

Despite compelling law to the contrary, Comcast argues that this action is a "carbon copy" of the complaint filed in *Hart v. Comcast Corp.*, No. C-07-06350 (N.D. Cal.); and, thus, that this Court should follow the Northern District of California's June 25, 2008 decision and conclude that this action should be stayed pending final resolution of the FCC proceeding.[4] Mot. at 15. The *Hart* action is substantively different than this one, however, and that Court's analysis does not apply here. The complaint in *Hart* includes several claims that Comcast's throttling practices were wrongful:

> • "Defendants unjustifiably breached the contract by restricting
>   Plaintiff's and the Class' access to, and use of, the Service."
>   *Hart* Compl. ¶ 52.
> • "In breach of the covenant of good faith and fair dealing,
>   Defendants have blocked and/or impeded use of the Service by

---

[4]     Comcast's primary jurisdiction arguments directly contradict the arguments that Comcast made to the FCC – namely, that *the FCC does not have jurisdiction* over this action. *See* FCC Order ¶ 15 ("Comcast nevertheless argues that the Commission cannot exercise jurisdiction over its interference with peer-to-peer TCP connections . . . because such authority must be 'ancillary' to something, but here it is not clear what that something might be."); *id.* ¶¶ 16-27. The FCC noted Comcast's turn-about and rejected its jurisdictional challenge:

> The courts of equity have long frowned on a party making representations
> to one tribunal, benefiting from those representations [as Comcast did in
> *Hart*], and then turning around to assert precisely the opposite claims to a
> second tribunal. We are similarly disturbed at Comcast's conduct here
> and find it all the more reason to dismiss Comcast's jurisdictional
> challenge as meritless.

FCC Order ¶ 23.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 17
Case No. CV 08-852 PK**

Plaintiff and the Class by impairing use of the Blocked Applications." *Id.* ¶ 58.

- "Under the [Consumer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*], it is unlawful to knowingly and without authorization cause the transmission of a program, information, code or command to a computer used for interstate commerce or communication . . . .  By sending unauthorized secret messages to the computers of Plaintiff and the Class in order to block and/or impede their use of the Blocked Applications, . . . . Defendants have violated the CFAA." *Id.* ¶ 88.

These claims allege that, by blocking users' attempts to engage in file-sharing, Comcast violated state and federal law; and the prayer for relief asks for injunctive relief enjoining this practice. *Hart* Compl. at 19.  Thus, the Northern District of California's decision to stay the action pending resolution of the FCC proceeding – the very subject of which is whether Comcast's actions constitute reasonable network management practices – is not surprising.  In contrast, no such claim or request for relief appears in Topolski's complaint because Topolski's claims do not depend on whether Comcast's network management techniques are reasonable, just whether Comcast mislead the public as to the nature of the high-speed Internet service it sells.  Accordingly, this action should not be stayed under the primary jurisdiction doctrine.

Similarly, this action should not be dismissed as preempted by federal law.  In this regard, Comcast relies on a provision of the Communications Decency Act of 1996 ("CDA"), an Internet parental control statute, 47 U.S.C. § 230(b), and claims that that provision reflects Congress's intention to ensure that the Internet remains "unfettered by Federal or state regulation."  Mot. at 18.  But the CDA does not have the preemptive reach that Comcast suggests.  Rather, the CDA is a parental control statute with the "primary goal" of "control[ling] the exposure of minors to indecent material." *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003).  The CDA creates immunity for Internet service providers only from tort suits based on their removal of offensive material (such as child pornography) posted by third parties; it does

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 18
Case No. CV 08-852 PK**

not immunize Internet service providers from all regulation and liability. *Id.*[5] Thus, federal

courts recognize that the CDA does not preempt state law causes of action:

> The purposes and objectives of the [CDA] support the conclusion that
> Congress did not intend to occupy the field of liability for providers of
> online interactive computer services to the exclusion of state law. Section
> 230's language and legislative history of reflect that Congress' purpose in
> enacting that section was not to preclude any state regulation of the
> Internet, but rather to eliminate obstacles to the private development of
> blocking and filtering technologies capable of restricting inappropriate
> online content. This purpose belies any congressional intent to bring
> about, through the CDA, exclusive federal regulation of the Internet.
> Accordingly, the CDA reflects no congressional intent, express or implied,
> to preempt all state law causes of action concerning interactive computer
> services.

*Zeran v. Am. Online, Inc.*, 958 F. Supp. 1124, 1131 (E.D. Va. 1997). Accordingly, the claims

here challenge Comcast's advertising practices and so are not preempted by the CDA.[6]


IV.     THE OREGON UTPA CLAIMS ARE NOT BARRED
        BY THE STATUTE OF LIMITATIONS.

Comcast next maintains that Topolski's Oregon UTPA claims are barred by the one-year

statute of limitations because, in May 2007, Topolski posted "initial findings" that Comcast was

interfering with his attempts to upload files using peer-to-peer file sharing applications. For

several reasons, however, Topolski's UTPA claims are not barred by the statute of limitations.

---

[5]     Comcast conceded as much to the FCC, and argued that this section *only* creates the
third-party posting immunity, and indeed actually *restricts* the Commission's authority. *See*
FCC Order ¶ 15, n.69.

[6]     *Cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) (state false advertising laws
preempted by Federal Cigarette Labeling and Advertising Act, which expressly regulates
cigarette and smokeless tobacco *advertising*); *Am. Airlines v. Wolens*, 513 U.S. 219 (1995)
(state consumer fraud claims against airlines preempted by Consumer Fraud Act, which
expressly regulates airline advertising); *True v. Am. Honda Motor Co., Inc.*, 520 F. Supp. 2d
1175, 1181 (C.D. Cal. 2007) (holding that the Energy Policy and Conservation Act, which
requires automobile manufacturers to display certain information on vehicles, preempt states
from regulating labeling of vehicles, not from regulating false or misleading advertisements).

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 19
Case No. CV 08-852 PK**

First, Comcast relies wholly on statements that Topolski submitted as "public comments" in the FCC proceeding, which cannot be considered at the Rule 12 stage and, at best, create questions of fact precluding dismissal. Second, the Complaint alleges that Comcast continually violated the Oregon UTPA throughout the limitation period, *i.e.*, after July 18, 2007, and thus, at a minimum, Topolski can pursue claims based on that conduct. In all events, Comcast's repeated and continual denials that it was violating the UPTA equitably tolled the statute of limitations under Oregon law.

###    A.    At Best, Topolski's FCC Comments Create Questions Of Fact Regarding When The Statute Of Limitations Was Triggered.

As a threshold matter, none of the documents on which Comcast relies may be considered by the Court. Comcast's argument relies entirely on written "comments" submitted by Topolski to the FCC pursuant to the FCC's request for public comments. *See* Mot. at 22. But because the Complaint does not reference, attach, or rely on these comments, the Court may not consider them at this stage. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (court may not look to documents beyond the four corners of the complaint unless they are attached to or relied on by the complaint).

Accordingly, the Court may not consider these documents at this stage and Comcast's motion to dismiss the Oregon statutory claims must be denied. *Id.*, 250 F.3d at 688 (overturning district court's dismissal of case and noting the district court incorrectly "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice

of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light

most favorable to plaintiffs"). [7]

Moreover, even if the Court could consider these comments, at most they create a

material dispute of fact regarding when Comcast committed the violations at issue and when

Plaintiff sufficiently knew of the violations to bring this class action.  On the one hand, according

to Comcast, Comcast disclosed its network management practices as early as January 2006,

*see* Mot. at 7, and continued to make "disclosures" throughout the entire period at issue, *id.* at

6-9, such that Topolski should have known that Comcast was blocking certain Internet

applications.  In contrast, the Complaint alleges that throughout the period in which Comcast

now claims to have been "disclosing" its practices to consumers, Comcast affirmatively and

repeatedly denied that it was blocking Internet applications throughout 2007; did not begin to

disclose that it was delaying applications until February 2008; and did not disclose the full extent

of its blocking activities until July 2008.  Compl. ¶¶ 22, 25.  *See also* FCC Order ¶¶ 6, 9.

These circumstances create a question of fact that cannot be resolved at the Rule 12 (or

even the summary judgment) stage.  The Oregon Court of Appeals has held that, in

---

[7]     Nor may the Court take judicial notice of these comments under Rule 201 of the Federal
Rules of Evidence.  Under that Rule, judicial notice is appropriate only for a fact "not subject to
reasonable dispute" that is either "generally known" or "capable of accurate and ready
determination."  Comments submitted to the FCC provide no more than assertions of fact,
"opinions," or "input" from any individual or organization that wishes to comment on an issue
pending before the FCC and for which the FCC has allowed public comment.  *See* FCC,
*Electronic Filing of Documents in Rulemaking Proceedings*, 63 Fed. Reg. 24,121 ¶ 2 (May 1,
1998) (asking for comments from "interested parties"); FCC, *Comment Sought On Petition For
Declaratory Ruling Regarding Internet Management Policies*, WC Docket No. 07-52, at 1
(Jan. 14, 2008), http://hraunfoss.fcc-gov/edoc_public/attachmatch/DA-08-91A1.pdf (asking for
comments from the general public on Comcast's network management).  Such comments
frequently are subject to dispute (and, indeed, Comcast disputed Topolski's comments before
the FCC), and are not "generally known" facts that are "capable of accurate and
ready determination."

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 21
Case No. CV 08-852 PK**

circumstances such as those here, the question of when a plaintiff "should be aware of tortious

conduct" presents a question of fact for the jury. Specifically, in *McCulloch v. Price

Waterhouse LLP*, 971 P.2d 414 (Or. Ct. App. 1998), the plaintiff brought an action against the

accounting firm that prepared its taxes for damages arising from problems with his tax return that

led to assessments by the Internal Revenue Service ("IRS"). Price Waterhouse argued that the

one-year statute of limitations barred the plaintiff's UTPA claim because the IRS had informed

the plaintiff three years previously that there were problems with his return; and, because over a

year before the plaintiff filed suit, Price Waterhouse issued him a bill for "Internal Revenue

Service audit issues . . . and the related proposed federal tax deficiency assessments." *Id.* at 420.

In contrast, the plaintiff claimed that he relied on the defendant's assurances that the IRS had

made a mistake, and did not learn otherwise until a meeting with the IRS that occurred within the

limitations period. *Id.* The court held that questions of fact precluded summary judgment on

statute of limitations grounds:

> Even though the correspondence was sufficient to put plaintiff on notice
> before August 1994 that the returns were not filed on time and that the IRS
> had not accepted plaintiff's return as filed, there is a genuine issue of
> material fact about whether plaintiff should have reasonably relied on
> defendants' representations that the IRS's positions were mistaken and
> would be rectified. A trier of fact could conclude from the evidence in the
> summary judgment record that the delay in filing the complaint was due to
> plaintiff's reasonable reliance on defendants' representations.

*Id.* at 421.

Likewise, in *Wright v. Kia Motors America, Inc.*, the District of Oregon found that

questions of fact regarding when a class plaintiff "discovered" she was harmed precluded

summary judgment based on the statute of limitations. The plaintiff brought a UTPA claim on

behalf of a class of similarly situated individuals against the car manufacturer Kia based on Kia's

alleged failure to disclose a seatbelt defect. 2008 WL 552046, at *1 (D. Or. Feb. 26, 2008). Kia

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 22
Case No. CV 08-852 PK**

argued that Wright's claim was barred by the statute of limitations because, more than a year

before Wright brought suit, she noticed that her car's seatbelts were not functioning properly. *Id.*

Wright immediately contacted the dealership and consulted an outside mechanic. Kia moved for

summary judgment based on this evidence. But the Court found that the action was not time

barred, in part, because the statute of limitation may not begin to run until the class plaintiff

began an "investigation" a few months after discovering the injury. Furthermore, the court stated

that "a jury could reasonably conclude that plaintiff investigated the seatbelt defect around the

time she contacted counsel regarding possible legal redress against the defendant." *Id.* at *3.

The same conclusion is warranted here. According to Comcast, Topolski knew in

May 2007 that Comcast had been interfering with his own attempts to complete uploads.

Mot. at 22. But, according to the Complaint and the FCC Order, it may not have been until

October 2007 that Topolski first learned of the widespread nature of Comcast's activities, and

it was not until May 2008 that Topolski first sought legal counsel. Compl. ¶¶ 23-24; FCC

Order ¶ 7. Moreover, Comcast repeatedly misrepresented and failed to disclose its actual

network management practices, and did not begin to admit that it engaged in throttling until

February 2008:

> • In August 2007, Internet weblogs and online journals began reporting that
> Comcast "may be throttling certain P2P applications." FCC Order ¶ 6. Comcast
> denied this, even though, as the manager of its network, Comcast had far greater
> technological information at its disposal to know precisely whether it was impeding
> such access. *Id.* ("We're not blocking any access to any applications, and we don't
> throttle any traffic.").

> • In October 2007, the Associated Press released the results of its tests
> confirming that Comcast was engaged in throttling. Compl. ¶¶ 23-24; FCC Order
> ¶¶ 7-8. Comcast still continued to deny it. Compl. ¶ 25.

> • It was not until February 12, 2008, that Comcast first admitted to delaying
> access for certain P2P applications in its comments to the FCC. *Id.* at 26; FCC Order
> ¶ 9. But even then, Comcast continued to deny the extent of its conduct by asserting

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 23
Case No. CV 08-852 PK**

that it delayed these applications only during "periods of peak network congestion." *Id.*

> • The true nature of the extent and scope of Comcast's conduct was uncovered when an independent group studied Comcast's congestion patterns and determined that Comcast impeded its users' Internet access around the clock. Compl. ¶ 27. Only after this revelation did Comcast begin admit, in comments submitted to the FCC on July 10, 2008, the true scope of its practice. *Id.*

Thus, Comcast's statements in its Motion, the allegations of the Complaint, and the facts set forth in the FCC Order, present conflicting views of the central facts at issue: when exactly Comcast committed the alleged violations, and when Toploski actually knew that he had a claim on behalf of a class of individuals. Indeed, according to the Complaint and the FCC Order, it could not have been before October 2007, when the Associated Press issued formal test results proving that Comcast engaged in this practice on a wide-scale basis, that Topolski could suspect that a claim could be brought on behalf of a class.

This is in large part due to Comcast's own actions in fraudulently concealing its activities. As alleged in the Complaint (and as found by the FCC), Comcast engaged in a campaign of fraudulent concealment and denial in an attempt to cover up the extent and harm of its activities. The very technological method by which Comcast impedes consumers' uses of Internet applications is one of concealment and subterfuge, and in fact involves the *impersonation* of a user's personal computer. Compl. ¶¶ 2, 24. When confronted, Comcast repeatedly denied and lied about the extent of its interference with users' access to the Internet. *See* FCC Order ¶ 53 (Comcast's "first reaction" to the allegations of throttling "was not honesty, but at best misdirection and obfuscation"). Comcast did not admit that it interfered with Internet traffic *at all* until February 2008. Under Oregon law, the statute of limitations may be tolled by Comcast's own fraudulent concealment of Topolski's cause of action. *See Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239, 1241 (Or. 1972) ("a defendant who wrongfully conceals material

facts and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued

against him is not permitted to assert the statute of limitations as a bar to an action against him").

In sum, there are simply too many questions of fact to warrant dismissal of Topolski's

UTPA claims as barred by the statute of limitations.

**B.**    **Topolski Can Bring Oregon UTPA Claims Based On**
        **Comcast's Wrongful Conduct During The Period Of Limitations.**

In addition, Comcast's repeated and continual misrepresentations amount to a

"continuing violation" that tolls the statute of limitations under the UTPA.  The "continuing

violation" doctrine applies "where there is 'no single incident' that can 'fairly or realistically be

identified as the cause of significant harm,'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir.

2002) (citation omitted); or, where there are "'repeated instances or continuing acts of the same

nature.'"  *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (citation omitted).  Oregon

courts recognize this doctrine.  *See, e.g.*, *Barns v. City of Eugene*, 52 P.3d 1094, 1096 (Or. Ct.

App. 2002)).  Although Oregon courts have not considered whether to apply this doctrine to

claims brought under the UTPA, other courts have applied it to other states' consumer protection

laws.  *See, e.g.*, *Betz v. Trainer Wortham & Co., Inc.*, 236 Fed. Appx. 253, 2007 WL 1494018

(9th Cir. May 11, 2007) (applied to California unfair business practices claim); *Tubos de Acero*

*de Mexico, S.A. v. American Int'l Investment Corp., Inc.*, 292 F.3d 471, 482 (5th Cir. 2002)

(applied to Louisiana Unfair Trade Practices Act claim); *Tiberi v. Cigna Corp.*, 89 F.3d 1423,

1430-31 (10th Cir. 1996) (applied to New Mexico Unfair Trade Practices Act claim).

Given Comcast's continuing advertisements and failures to disclose, the facts here fit

neatly into the continuing violation doctrine.  The Complaint alleges that Comcast continued to

make material misrepresentations and omissions about its high-speed Internet service throughout

2007 and well into 2008.  Compl. ¶¶ 23-29; *id.* ¶ 30 ("At all relevant times, Comcast has

Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 25
Case No. CV 08-852 PK

engaged in the same practices . . . .").  The Complaint also alleges that Comcast continued to

deny, and failed to disclose, salient characteristics about its service throughout 2007 and well

into 2008.  *Id.*  The FCC Order's findings are consistent with those allegations.  FCC Order ¶ 6

(Comcast stated in August 2007 that "We're not blocking any access to any applications, and we

don't throttle any traffic."); *id.* ¶ 9 (Comcast first began to disclose its practices in part on

February 12, 2008, and more on July 10, 2008).

      As a result of Comcast's actions, Topolski and the other members of the class continually

suffered harm during this period.  Compl. ¶¶ 35, 82, 90.  Indeed, the FCC recognized that

"Comcast's failure to disclose the company's practice to its customers has compounded the

harm" to Comcast's customers.  FCC Order ¶ 1.  Therefore, as a result of Comcast's continual

misrepresentations, Topolski's claims (and those of his fellow class members) are not time

barred under ORS 646.638(6).

      In any event, even if the Court decides that Comcast's conduct does not constitute a

continuing violation, Topolski can, at a minimum, seek damages based on the conduct

that occurred during the limitation period.  *See, e.g.*, *Sherwood v. Finch*, No. CV-00-349-HU,

2000 U.S. Dist. LEXIS 20906, at *17 (D. Or. Dec. 20, 2000) (holding that plaintiff could pursue

fair housing violations committed within limitation period); *Simpson v. Burrows*, 90 F. Supp. 2d

1108, 1126 (D. Or. 2000) (where plaintiff received libelous letters for many years, claims based

on letters received during limitations period were not barred); *Davis v. Bostick*, 580 P.2d 544

(Or. 1978) (wife's claims of years-long emotional stress and mental anguish against husband

were not barred to the extent they were based on conduct within the limitations period).  Thus,

even if Comcast's actions did not amount to a continuing tort, Topolski's claim still would not be

time barred.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 26
Case No. CV 08-852 PK**

## V.    THE PENNSYLVANIA UTPCPL CLAIM SHOULD NOT BE DISMISSED

Comcast next argues that Topolski cannot bring a claim under the Pennsylvania UTPCPL because that law purportedly only protects consumers who actually reside in Pennsylvania. Comcast misrepresents Pennsylvania law.

Topolski and other non-Pennsylvania-resident class members have standing to bring claims under Pennsylvania's UTPCPL because their claims arise out of the conduct and business of a significant Pennsylvania citizen, Comcast. The Pennsylvania UTPCPL protects all members of the public with sufficient contacts to Pennsylvania who are victims of unfair trade practices that were committed in Pennsylvania, regardless of the plaintiff's residence. The plain language of the UTPCPL does not limit the statute to citizens or residents of Pennsylvania, and creates a private right of action for "*[a]ny person* who purchases or leases goods or services" and "thereby suffers any ascertainable loss of money or property" as a result of an unfair practice. 73 P.S. § 201-9.2(a) (emphasis added). A "person" is defined as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." *Id.* § 201-2(2). Nowhere does the statute limit the right to seek redress for unfair trade practices to Pennsylvania victims.

The Pennsylvania Supreme Court has held that the UTPCPL must be "liberally construed" to effect its purpose, which is to protect the public from – and, indeed, to eradicate – fraud and unfair or deceptive business practices:

> The Legislature sought by the Consumer Protection Law to benefit the public at large by eradicating, among other things, "unfair or deceptive" business practices . . . . [T]his Law attempts to place on more equal terms seller and consumer. These remedial statutes are all predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace. Instantly, the Legislature strove, by making certain modest adjustments, to ensure the fairness of market transactions . . . .

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 27
Case No. CV 08-852 PK**

> [P]revention of deception and the exploitation of unfair advantage has
> always been an object of remedial legislation.

*Commonwealth v. Monumental Properties, Inc.*, 329 A.2d 812, 815-17 (Pa. 1974).

Comcast incorrectly proclaims that "Pennsylvania courts are uniform in their interpretation of the UTPCPL . . . that the statute 'provides a remedy ***only*** to Pennsylvania residents.'" Mot. at 24 (emphasis in original). In fact, following the Supreme Court's edict to construe the UTPCPL liberally, Pennsylvania courts ***do*** allow non-resident plaintiffs to pursue claims under the UTPCPL when those claims serve to eradicate unfair or deceptive business practices in Pennsylvania. For example, in *Weinberg v. Sun Company, Inc.*, 740 A.2d 1152 (Pa. Super. Ct. 1999), *rev'd on other grounds*, 565 Pa. 612 (2001), a non-Pennsylvania-resident individual brought a class action on behalf of individuals of several states against a Pennsylvania-based oil corporation, Sun Company Inc. ("Sunoco"), under the UTPCPL. *Id.* at 1164. The plaintiff sought damages for a nationwide class caused by Sunoco's nationwide advertising campaign concerning the benefits of using higher octane gasoline. *Id.* Sunoco objected to class certification because, it claimed, a Pennsylvania court does not have jurisdiction to certify a nationwide class. The court disagreed. Noting that the class certification rules had been changed to allow out-of-state individuals to submit themselves to Pennsylvania's jurisdiction, the court held that "a Pennsylvania court may certify a national class." *Id.* at 1164. In particular, the court reversed the trial court's order denying certification and concluded that a class may be certified when "(a) the defendant is a Pennsylvania corporation, (b) the defendant's principal place of business is in Pennsylvania, (c) the defendant's deceptive conduct was conceived in and disseminated from Pennsylvania, and (d) Pennsylvania has the most significant contacts with all aspects of the litigation." *Id.* at 1161, 1164 (answering certified question in the affirmative).

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 28
Case No. CV 08-852 PK**

Similarly, in *Mikola v. Penn Lyon Homes, Inc.*, No. 07-0612, 2008 WL 2357688 (M.D. Pa. June 4, 2008), the Middle District of Pennsylvania held that two Florida residents could pursue their individual UTPCPL claims against defendants doing business in Pennsylvania who made misrepresentations as to the construction of a Pennsylvania home. *Id.* at *3. The *Mikola* court followed the Pennsylvania Supreme Court's teaching that "the UTPCPL should be liberally interpreted in order to effectuate its primary purpose, which is the prevention of fraud." *Id.* Because the business transaction took place in Pennsylvania, the court concluded, "declining to provide protection of UTPCPL to individuals who are not residents of the state, but nevertheless engaged in a large transaction entirely within the state, would invite fraud upon non residents engaged in transactions within the state." *Id.*

The same analysis applies here. As Defendants have admitted elsewhere,[8] the Defendants are the "national operating entities that are responsible for the nationwide advertising and marketing of Comcast's high speed Internet service and for developing and implementing network management practices." Compl. ¶ 11. Plaintiff's Complaint centers entirely around the allegation that that very advertising was misleading and caused actionable harm to him and the other proposed class members. As in *Weinberg*, the conduct at issue occurred in Pennsylvania by a Pennsylvania corporation. And, as alleged in the Complaint, Defendant Comcast Corporation – headquartered in Pennsylvania – is the national parent company of all businesses in the nation that are responsible for Comcast's high-speed Internet service, advertising, and network management. Compl. ¶ 7. Each class member thus has a strong tie to Pennsylvania and

---

[8]    *See* Notice of Removal, *Leigh v. Comcast of California II, Inc.*, No. CV-08-04601 (C.D. Cal.) ¶ 7, Dkt. #1, filed July 14, 2008; Notice of Removal, *Lis v. Comcast of Chicago, Inc.*, No. 1:08-cv-3984 (N.D. Ill.) ¶ 9, Dkt. #1, filed July 14, 2008; Notice of Removal, *Libonati v. Comcast Cablevision of Jersey City, Inc.*, No. 08cv03518 (D.N.J.) ¶ 9, Dkt. #1, filed July 14, 2008.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 29
Case No. CV 08-852 PK**

its consumer protections.  Accordingly, Topolski and the other non-Pennsylvania-resident class

members have claims under the UTPCPL.

The cases relied on by Comcast are distinguishable and do not support Comcast's

argument here.  Indeed, in the primary case on which Comcast relies, *Baker v. Family*

*Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006) – a racketeering case between

out-of-state parties regarding "debt management" schemes – the Eastern District of Pennsylvania

admitted that "[t]here is no decision by a Pennsylvania state court limiting application of the

UTPCPL to Pennsylvania residents." *Id.* at 413.  That court nonetheless concluded that, because

UTPCPL class actions frequently are brought on behalf of classes of Pennsylvania citizens, *id.* at

413 n.30, and because other federal courts have held that state consumer protection acts protect

state citizens, *id.* at 413, the UTPCPL may only be invoked by a Pennsylvania resident.  *Id.* at

413-14.  The court's reasoning is unpersuasive given *Mikola* and *Weinberg*, but in any event, the

Court was not presented with a situation, like this one, where the actionable conduct emanated

from Pennsylvania from defendants that were Pennsylvania citizens and residents.

Likewise, in *Levy v. Keystone Food Prods.*, No. 07-5502, 2008 WL 4115856 (E.D.

Pa. Aug. 27, 2008), non-Pennsylvania residents brought a nationwide class action against

out-of-state food manufacturers/distributors based on the defendants' allegedly false advertising

of the nutritional content of the snack "Veggie Booty."  *Id.* at *1.  The Eastern District of

Pennsylvania held that the plaintiffs had "failed to explain their position" on why the UTPCPL

should have "extraterritorial" effect, and thus dismissed the UTPCPL claim.  *Id.* at *6.  In that

case, however, neither the named plaintiffs nor the defendants were Pennsylvania residents, and

**Plaintiff's Opposition to Defendants' Motion to Stay**
**and Alternative Motion to Dismiss – 30**
**Case No. CV 08-852 PK**

there was no evidence that any of the conduct that allegedly violated the UTPCPL originated in or emanated from Pennsylvania.[9]

In sum, Topolski has standing to bring a claim under the UTPCPL because the actionable conducted emanated from Pennsylvania and the defendants are Pennsylvania citizens and residents.[10]

---

[9]     The other cases cited by Comcast are similarly inapposite.  In *Stone St. Servs., Inc. v. Daniels*, No. CIV.A. 00-1904, 2000 WL 1909373 (E.D. Pa. Dec. 29, 2000), the Eastern District of Pennsylvania noted that "[s]tate consumer protection laws are designed to protect the residents of the states in which the statutes are promulgated," *id.* at *5; but, the court's holding was that applying a Pennsylvania choice-of-law provision in a consumer contract would violate Kansas public policy where "the contract was negotiated and executed in Kansas, and was allegedly approved by Breaux, then a resident of Kansas."  This conclusion is actually consistesnt with Plaintiff's position here.

Likewise, in *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000), also a nationwide class action, the court conducted a choice-of-law analysis and determined that each consumer's claims arose under the law of his or her state of residence.  *Id.* at 213.  Again, however, the court was not faced with a situation where the actionable conduct emanated from Pennsylvania; rather the only purported connection with Pennsylvania was that some class members may reside there (and, indeed, not even the plaintiffs in that case argued that Pennsylvania law would apply to the whole class).  *Id.*

[10]    Moreover, to the extent Comcast is making a choice-of-law argument, it is too soon to decide that issue.  And even on the existing record, it is not at all clear that Pennsylvania law would not apply to Topolski's claims.  The conduct at issue in this case – Comcast's false advertising and non-disclosures regarding its high-speed Internet service – emanates from Pennsylvania because, according to the Defendants, that is where the Defendants determine "the nationwide advertising and marketing of Comcast's high-speed Internet service" and "develop[] and implement[] network management practices."  *See* Compl. ¶ 11; *infra* n.14.  In such circumstances, Pennsylvania law may well apply to Comcast's actions.  *See, e.g.*, *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552 (W.D. Wash. Feb. 22, 2008) (in nationwide class action against Microsoft alleging deceptive advertising, court applied Washington law because "Washington is the location where 'the conduct causing the injury occurred," Microsoft "developed and launched its allegedly deceptive promotional program in Washington," and "Washington has a unique and substantial relationship with [Microsoft], one of Washington's largest corporate citizens").

## VI.   <u>TOPOLSKI MAY PURSUE UNJUST ENRICHMENT CLAIMS</u>

Finally, Comcast argues that Topolski's unjust enrichment claims under Pennsylvania and Oregon law, Counts II and IV respectively, must be dismissed because "the parties' relationship is governed by contract."  Mot. at 25-27.  "Unjust enrichment" is a quasi-contract claim that may be pleaded either by itself or as an alternative to a contract claim.  Here, Topolski's unjust enrichment claims should not be dismissed.

As a threshold matter, Comcast does not argue that the Complaint fails to state the elements of an unjust enrichment claim.  Nor could it.  To state a claim for unjust enrichment, a plaintiff must plead that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it.  *Volt Servs. Group v. Adecco Employment Servs.*, 35 P.3d 329, 337 (Or. Ct. App. 2001).  Unjust enrichment provides a recovery for a plaintiff when there is no contractual relationship on which a claim for relief could be based.  *See* 66 Am. Jur. 2d *Restitution and Implied Contracts* § 9 ("Unjust enrichment describes a recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay.").  The allegations in the Complaint satisfy these standards. *See* Compl. ¶¶ 54-60 (Count II, Unjust Enrichment Under Pennsylvania Law), ¶¶ 69-75 (Count IV, Unjust Enrichment Under Oregon Law).

Nonetheless, Comcast argues that Plaintiff is unable to pursue recovery under a theory of unjust enrichment because the Comcast Agreement for Residential Services operates as a formal "contract" that forecloses any claims based on quantum meruit.  Even assuming that the

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 32
Case No. CV 08-852 PK**

Agreement for Residential Services constitutes a "contract,"[11] Defendants are not even parties to

the document.  By its express terms, the subscriber agreement is a compact between Plaintiff and

"the operating company subsidiary of Comcast Corporation that owns and/or operates the cable

television system in [his] area."  Ex. A, Declaration of Jennifer Green at 1, Dkt. #30, filed

Oct. 6, 2008.  Neither Defendant Comcast Corporation, nor any of the other named Defendants,

are "subsidiaries" that own and/or operate the cable television system in Oregon.  To the

contrary, Defendants repeatedly identify themselves as "national operating entities" located in

Pennsylvania.  Accordingly, Topolski does not bring any claims based on contract.  Rather, the

gravamen of this action is that Comcast engaged in unfair trade practices and that this is what

caused the plaintiff's harm.  Thus, there is no contractual cause of action that could bar recovery

under an unjust enrichment theory.

     In any event, Comcast's argument misrepresents well-settled law because even where a

plaintiff may have a contractual claim, he still can pursue an unjust enrichment claim as an

alternative means of recovery.  *Gonzalez v. Old Kent*, No. 99-5959, 2000 WL 1469313, at \*6

(E.D. Pa. Sept. 21, 2000) (denying motion to dismiss unjust enrichment claim as premature

because plaintiffs are free to pursue alternative theories of recovery); *L.H. Morris Elec., Inc. v.*

*Hyundai Semiconductor Am., Inc.*, 125 P.3d 1, 8-9 (Or. Ct. App. 2005) (allowing enforcement of

arbitration award that resolved both contract and *quantum meruit* claims because arbitrators

could have concluded that the damages were not covered by the contract and thus were

recoverable in *quantum meruit*; or, that the award was a combination of contract and *quantum*

*meruit* damages).  Indeed, under both Pennsylvania and Oregon law, a plaintiff can include an

---

[11]    The Agreement for Residential Services is an adhesive document with terms imputed to
Plaintiff without the opportunity for objection or alteration.

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 33
Case No. CV 08-852 PK**

unjust enrichment claim as an alternative to a breach of contract claim. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006);[12] *Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 142 P.3d 1044, 1052-53 (Or. 2006). So long as the plaintiff has alleged sufficient facts to support a claim for unjust enrichment – which Topolski here has done – the unjust enrichment claim should not be dismissed. *See Gonzalez*, 2000 WL 1469313 at *6.[13]

---

[12]      *See also, e.g.*, *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469 (E.D. Pa. 2008) (certifying class where plaintiff asserted claims for breach of contract, unjust enrichment, and breach of Pennsylvania's consumer protection act).

[13]      Moreover, under Pennsylvania law, if the contract is found to be void or voidable, the unjust enrichment claim may prevail. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1255 (Pa. 2006). *See, e.g.*, *De Joseph v. Zambelli*, 139 A.2d 644 (Pa. 1958) (misrepresentation of a material fact and fraud); *Line Lexington Lumber & Millwork Co., Inc. v. Penn. Pub. Corp.*, 301 A.2d 684 (Pa. 1973) (unilateral mistake). Thus, even if Topolski brought a contract claim, the discovery process could show that the contract is invalid due to Comcast's misrepresentations about the characteristics of its Internet services. In that situation too, Topolski would be able to recovery under a theory of unjust enrichment.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants' Motion to Stay and Alternative Motion to

Dismiss should be denied.

Dated:  October 28, 2008                    Respectfully submitted,

/s/      Kari E. Hong
Kari E. Hong
OSB # 06590
  kari@honglawfirm.com
 (503) 242-3500
*Attorney for Plaintiff Robert M. Topolski*

LAW OFFICES OF KARI E. HONG
320 SW Stark Street, Suite 518
Portland, OR 97204
T: (503) 242-3500
F: (503) 242-3505

August J. Matteis, Jr.*
  matteisa@gilbertoshinsky.com
Alyson A. Foster*
  fostera@gilbertoshinsky.com
GILBERT OSHINSKY LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
T: (202) 772-2200     F: (202) 772-1924
* Application for Admission *Pro Hac Vice* Pending

Gregory P. Erthal
  gerthal@simmonscooper.com
SIMMONSCOOPER LLC
707 Berkshire Blvd., PO Box 521
East Alton, IL 62024
T: (618) 259-2222     F: (618) 259-2251

Andrea Bierstein
  abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN
  SHERIDAN FISHER & HAYES LLP
112 Madison Avenue
New York, NY 10016-7416
T: (212) 784-6403     F: (212) 784-6420

*Attorneys for Plaintiff Robert M. Topolski*

**Plaintiff's Opposition to Defendants' Motion to Stay
and Alternative Motion to Dismiss – 35
Case No. CV 08-852 PK**